UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:15-mc-16-JAM-KJN |
| Plaintiff, | No. 2:15-mc-17-JAM-KJN |
| v. | No. 2:15-mc-99-JAM-KJN |
| HODA SAMUEL, | |
| Defendant. | ORDER |

INTRODUCTION

The United States initiated six miscellaneous actions and obtained writs of garnishment against multiple accounts and other assets related to defendant Hoda Samuel.[1] Objections to the writs of garnishment were filed. Several of the objections apply globally to all of the pending writs of garnishment, whereas others target specific accounts/assets.

---

[1] On September 4, 2015, all six of the miscellaneous cases were related. However, upon the United States' request, the court subsequently terminated the writs of garnishment at issue in Case No. 2:15-mc-94-JAM-KJN, Case No. 2:15-mc-96-JAM-KJN, and Case No. 2:15-mc-100-JAM-KJN pursuant to 28 U.S.C. § 3205(c)(10)(B), and closed those actions. As such, only three of the original six miscellaneous cases remain pending.

1

After carefully reviewing the objections, the parties' written briefing,[2] the record, and the applicable law,[3] the court resolves the objections in all the pending miscellaneous actions in this comprehensive order.[4]

BACKGROUND

On January 22, 2013, a jury convicted defendant of multiple counts of mail fraud, as well as one count of conspiracy to commit mail fraud and make false statements in mortgage applications. (Crim. ECF Nos. 315, 429.) On March 21, 2013, the court approved a stipulation for the entry of a personal forfeiture money judgment. (Crim. ECF No. 336.) The order approving the stipulation provided as follows:

> For good cause shown, the Court hereby imposes a personal forfeiture money judgment against defendant Hoda Samuel in the amount of $250,000. An initial payment of $20,000 is due on or before April 30, 2013. The remaining $230,000 shall be paid in $1,500 monthly payments due by the 5th of each month starting on May 5, 2013, while defendant Hoda Samuel is out of custody, and will resume once she is released from custody until paid in full.
>
> Any funds applied towards such judgment shall be forfeited to the United States of America and disposed of as provided for by law. Prior to the imposition of sentence, any funds delivered to the United States to satisfy the personal money judgment shall be seized and held by the Internal Revenue Service, Criminal Investigation, in its secure custody and control.

(Id.) After a sentencing hearing conducted on August 15, 2013, defendant was sentenced to imprisonment for a total term of 120 months, with restitution to be determined at a later hearing. (Crim. ECF No. 426, 429.) The August 20, 2013 judgment stated that "[t]he preliminary order

---

[2] The United States requested the court to disregard several of defendant's objections and other filings as untimely. Nevertheless, in light of defendant's *pro se* status and location out of state, the court has considered all of defendant's filings on the merits, whether or not required to do so.

[3] Defendant is presently incarcerated at Carswell Federal Medical Center in Fort Worth, Texas. In light of defendant's incarceration, and because the court finds that oral argument would not be of material assistance, the court submits and resolves the pending matters on the record and written briefing pursuant to Local Rule 230(g).

[4] Citations to docket numbers in the underlying criminal case (Case No. 2:10-cr-223-JAM) are styled as "Crim. ECF No. __." Citations to docket numbers in the various miscellaneous cases are styled using the last two digits of the miscellaneous case numbers, i.e., "16 ECF No. __"; "17 ECF No. __"; and "99 ECF No. __."

2

for money judgment filed 3/21/2013 is hereby made final as to the defendant, and shall be incorporated into the judgment." (Crim. ECF No. 429.)  Following a subsequent restitution hearing on June 27, 2014, an amended judgment was filed on July 3, 2014, and defendant was ordered to pay a $3,100.00 assessment; a $20,000.00 fine; and $3,029,412.64 in restitution, with payment to begin immediately.  (Crim. ECF Nos. 595-97.)  The amended judgment provides that, if defendant is incarcerated, "payment of restitution is due during imprisonment at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program."  (Crim. ECF No. 597.)  Defendant has filed two appeals to the Ninth Circuit Court of Appeals, which remain pending.  (See Ninth Circuit Case Nos. 13-10449, 14-10340.)

In an attempt to collect the restitution owed by defendant, the United States sought and obtained the writs of garnishment at issue in these three pending miscellaneous actions.  See 18 U.S.C. § 3613(a), (f); 28 U.S.C. § 3205.  The writs involve accounts and other assets at the following garnishees:

   (1) Case No. 2:15-mc-16-JAM-KJN: Tri Counties Bank
   (2) Case No. 2:15-mc-17-JAM-KJN: California Public Employees' Retirement System
       ("CalPERS")
   (3) Case No. 2:15-mc-99-JAM-KJN: Raymond James Financial Services, Inc.

Those writs, and accompanying documentation and instructions, were served on defendant and her spouse, Aiad Samuel.  The acknowledgements of service and answers by the garnishees were likewise served on defendant and her spouse.  Defendant and her spouse were instructed regarding their right to file objections to the writs and answers by the garnishees, as well as any appropriate claims of exemption.

Objections were ultimately filed as to each of the writs.  In several filings, defendant also requested the appointment of counsel for purposes of these miscellaneous cases.

DISCUSSION

Before considering the objections to the writs of garnishment, the court first addresses defendant's request for appointment of counsel.  Although these actions arise out of a criminal

judgment, they are nonetheless civil garnishment actions. It is "well-established that there is generally no constitutional right to counsel in civil cases." United States v. Sardone, 94 F.3d 1233, 1235 (9th Cir. 1996). Furthermore, there are no exceptional circumstances warranting the appointment of counsel in these civil proceedings. Indeed, for the reasons discussed below, defendant's contentions lack merit. Therefore, the court denies defendant's request for appointment of counsel.

As noted above, defendant raises some objections that apply globally to all of the pending writs of garnishment. The court first considers those global objections before addressing the issues with respect to specific accounts and assets.

<u>Defendant's Global Objections To All Pending Writs Of Garnishment</u>

Defendant first objects to the writs of garnishment, because she contends that she is compliant with her $25 per quarter payment schedule through the Bureau of Prisons Inmate Financial Responsibility Program ("BOP IFRP"), and has allegedly paid even more than what is required under that schedule. That argument is unavailing. The court's amended judgment provides that payment was to begin immediately and that "payment of restitution is due during imprisonment at the rate of *not less than* $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program." (Crim. ECF No. 597) (emphasis added). As such, the $25 quarterly payments merely represent the minimum payments required to comply with the court's amended judgment. Nothing in the terms of that amended judgment precludes the United States from pursuing collection of defendant's restitution debt from other assets in which defendant has an interest; nor does defendant provide any proper and binding legal authority in support of such a proposition.

Defendant next contends that the writs of garnishment are barred by the "compromised forfeiture agreement" she entered into with the United States, which ostensibly refers to the stipulated personal forfeiture money judgment entered on March 21, 2013, discussed above. However, that argument lacks merit, because forfeiture and restitution are separate remedies that serve different goals. As the Ninth Circuit Court of Appeals explained, criminal forfeiture, which involves the proceeds of the crime, is

4

> separate from restitution, which serves an entirely different purpose. Congress conceived of forfeiture as *punishment* for the commission of various crimes. The purpose of restitution, however, is not to punish the defendant, but to *make the victim whole again* by restoring to him or her the value of the losses suffered as a result of the defendant's crime. Accordingly, we have held that defendants may be required to pay restitution and forfeit the same amounts.

United States v. Newman, 659 F.3d 1235, 1241 (9th Cir. 2011) (internal citations, quotation marks, and other punctuation marks omitted) (emphasis in original). As such, payment of both restitution and criminal forfeiture does not amount to an impermissible double recovery. Id. Therefore, the stipulated personal forfeiture money judgment does not bar the United States from pursuing collection of defendant's restitution debt through the writs of garnishment.

Finally, several of defendant's filings appear to allege misconduct by numerous government actors involved with her criminal case, and include contentions that defendant's conviction and sentence were unlawful, improper, and unfair in various respects. Defendant is free to attempt to raise any such arguments in her appeals of the underlying criminal case to the Ninth Circuit. Nevertheless, such matters are not properly before this court, and because the Ninth Circuit has not stayed the restitution order, defendant's contentions regarding the criminal proceedings have no bearing here.

Having disposed of defendant's global objections to the propriety of the writs of garnishment, the court now turns to the specific accounts and assets at issue in the individual miscellaneous actions.

Case No. 2:15-mc-16-JAM-KJN:  Tri Counties Bank

The acknowledgement of service and answer of garnishee executed by Tri Counties Bank on March 16, 2015, indicates that Tri Counties Bank has 10 checking accounts (2 personal checking accounts and 8 corporate checking accounts) and one safety deposit box in which defendant maintains an interest. (16 ECF No. 9.) No specific objections or claims of exemption, other than the global objections discussed above, were filed with respect to the Tri Counties Bank accounts by either defendant or her spouse. As discussed below, the United States requests different relief with respect to the different types of accounts.

*Personal Accounts*

The garnishee identified two personal checking accounts: (a) xxxxx2463, held by Hoda S. Samuel and Aiad Samuel, with a value of $73,473.25 as of March 16, 2015 and (b) xxxxx6521, held by Aiad Samuel, with a value of $26,552.55 as of March 16, 2015. (16 ECF No. 9.) The United States requests liquidation and final garnishment of those accounts, contending that they are community property assets available for paying defendant's restitution debt. Based on the record before the court, the court agrees.

"Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a). Under California law, the community estate is generally liable for "a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a). The term "debt" means "an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise." Cal. Fam. Code § 902. Therefore, if the personal checking accounts are community property, they may be garnished to collect on defendant's restitution debt.

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code § 760. Thus, there is a general presumption that property acquired during marriage by either spouse is community property, and that presumption, which affects the burden of proof, can be overcome by the party contesting community property status, such as by tracing the property to a separate property source. See In re Marriage of Haines, 33 Cal. App. 4th 277, 289-90 (1995).

Here, although defendant's spouse, Aiad Samuel, was advised of his right to file objections or claims of exemption, he declined to do so with respect to the Tri Counties Bank accounts. Therefore, the contents of the personal checking accounts are presumed to be community property, and because the presumption was not rebutted, they are available for paying defendant's restitution debt. See United States v. Berger, 574 F.3d 1202, 1203 (9th Cir. 2009)

1  ("We hold that community property is available to satisfy a restitution judgment obtained under
2  the MVRA against a criminally liable spouse, including that portion of the property that otherwise
3  would potentially be awarded upon dissolution of marriage to an innocent spouse who was not
4  involved in the criminal activity."). Consequently, the court orders liquidation of the personal
5  checking accounts.

### *Corporate Accounts*

7  The garnishee, Tri Counties Bank, also identified several accounts which appear to be
8  corporate accounts: (a) xxxxx7867, held by Aiad and Hoda S. Samuel dba Mena Construction,
9  with a value of $1,857.46; (b) xxxxx7855, held by St. Mena and St. Marcorious, LLC, with a
10 value of $75,258.21; (c) xxxxx1183, held by St. Mena and St. Marcorious, LLC dba Meineke of
11 Sacramento, with a value of $9,362.58; (d) xxxxx9066, held by St. Mena and St. Marcorious,
12 LLC dba My Beauty & Barber College, with a value of $2,500.00; (e) xxxxx9078, held by St.
13 Mena and St. Marcorius, LLC dba My Beauty & Barber College, with a value of $2,500.00; (f)
14 xxxxx9091, held by St. Mena and St. Marcorious, LLC dba My Beauty & Barber College, with a
15 value of $5,000.00; (g) xxxxx1061, held by St. Mena and St. Marcorious, LLC dba Meineke of
16 Sacramento Payroll, with a value of $1,252.43; and (h) xxxxx2412, held by St. Mena and St.
17 Marcorious, LLC dba Meineke of Sacramento Vendor Account, with a negative value of
18 $1,273.00, all as of March 16, 2015. (16 ECF No. 9.)
19 The United States indicates that it subpoenaed bank records from Tri Counties Bank and
20 that, following review of such records, it appears that the corporate accounts have been used for
21 personal purposes, thereby potentially raising the issue of alter ego liability. However, the United
22 States requests an additional 45 days to conduct further, limited discovery regarding the issue and
23 submit further briefing with respect to the corporate accounts. The court grants that request, as
24 outlined below.

### *Safety Deposit Box*

26 The garnishee further identified the existence of a safety deposit box (No. 5200063), held
27 by Hoda S. Samuel or Magda H. Mikhail. (16 ECF No. 9.) The United States avers that it does
28 not know what "or" means; who Magda H. Mikhail is; or what the safety deposit box contains.

7

At this juncture, the United States requests an order permitting it to inspect, photograph, and inventory the contents of the safety deposit box in the presence of a Tri Counties Bank official; inspect and copy all records in Tri Counties Bank's possession associated with the creation, maintenance, or access to the safety deposit box; and to continue the garnishment on the safety deposit box pending further order of the court. Because those steps are reasonably necessary to determine whether the contents of the safety deposit box, if any, may be properly garnished, the court grants that request, as outlined below.

<u>Case No. 2:15-mc-17-JAM-KJN:  CalPERS</u>

The acknowledgement of service and answer of garnishee executed by CalPERS on March 30, 2015, indicates that CalPERS is paying defendant a monthly disability retirement benefit in the amount of $2,675.69, with no right to receive a lump sum payment. (17 ECF No. 8.)

Defendant's spouse, Aiad Samuel, failed to file any objections or claims of exemption with respect to defendant's CalPERS benefits. Defendant herself filed specific objections to garnishment of those benefits, but the court finds that defendant's objections are plainly without merit. (<u>See</u> Crim. ECF No. 701.) Contrary to defendant's contention, defendant's CalPERS disability retirement benefits, derived from her California state employment, do not constitute "certain annuity and pension payments" for eligible federal railroad workers and military service members under 26 U.S.C. § 6334(a)(6) and 18 U.S.C. § 3613(a)(1); nor do they constitute workmen's compensation under 26 U.S.C. § 6334(a)(7) and 18 U.S.C. § 3613(a)(1). Those statutory exemptions are clearly inapplicable by their own terms. Additionally, defendant's argument that the disability retirement benefits cannot be garnished because they are not connected to her crimes is unavailing. Provided that the benefits are not exempt, the United States can garnish them, irrespective of their involvement (or lack of involvement) in any crime. Finally, it is of no consequence that defendant has directed such disability retirement payments to be made into a family trust—the United States can garnish the benefits from CalPERS before they are paid into the trust. For these reasons, defendant's objections and claims of exemption are overruled.

The United States seeks to garnish, consistent with the Consumer Credit Protection Act, 25% of defendant's disability retirement benefits, commencing as of the time when CalPERS received the writ of garnishment on March 17, 2015.  (See 17 ECF No. 8.)  However, CalPERS objects to the requested relief.  According to CalPERS, the writ is defective and by its terms does not apply to defendant's disability retirement benefits.  The writ stated, in relevant part:

> Pursuant to the Writ of Garnishment (Retirement Accounts), you are required by law to withhold any and all accounts in which Hoda Samuel has an interest, including but not limited to any and all individual and/or joint retirement account(s), known as the Defined Benefit Plan ("DBP").  From the date on which you receive this Writ, you must retain the withheld funds until an Order from the court is issued that directs the disposition of the funds.

(17 ECF No. 5.)  CalPERS contends that the writ, as written, applies only to retirement *accounts*.  Because defendant does not have a defined account with CalPERS, and only receives a monthly allowance, the writ purportedly does not apply to defendant's disability retirement benefits.  CalPERS requests the court to clarify the terms of the writ and to apply it prospectively only.  It appears that, based on its interpretation of the writ, CalPERS has not been withholding 25% of defendant's benefits through the present.

CalPERS's strained interpretation of the writ, which is heavily reliant on unnecessary semantics, is unpersuasive.  The writ makes clear that the United States was attempting to garnish whatever property interests defendant may have in a CalPERS retirement program – whether it be characterized as an account, allowance, benefit, or entitlement.  To be sure, the writ was phrased somewhat broadly and imprecisely, but that is frequently the case when the government has limited information regarding the exact types of accounts or other property interests maintained by the defendant at the garnishee.  Nevertheless, this type of writ should have posed no difficulty to a garnishee who has full knowledge of the property interests maintained by the defendant at the garnishee, particularly a sophisticated state entity garnishee like CalPERS.  To the extent that CalPERS failed to withhold 25% of defendant's benefits, it did so at its own peril.  Indeed, the writ expressly cautioned:  "If you fail to answer this writ or to withhold property in accordance with this writ, the court may hold you liable for the amount of Hoda Samuel's non-exempt property that you failed to withhold."  (17 ECF No. 5) (bold capital letters in original).

1    That said, CalPERS indicates that it reached out to counsel for the United States on March
2    26, 2015, shortly after it received the writ, outlining CalPERS's position, and that the United
3    States did not respond to that correspondence. Only in the course of a late July 2015 telephone
4    conversation with counsel for the United States, as well as by virtue of a July 31, 2015 filing by
5    the United States, did counsel for CalPERS learn of the United States' position that CalPERS was
6    required to withhold 25% of defendant's benefits beginning immediately after CalPERS received
7    the writ. The United States does not appear to dispute that it did not respond to CalPERS's initial
8    correspondence. Therefore, the court will only hold CalPERS responsible for any benefits not
9    properly withheld as of August 1, 2015. As of that time, CalPERS can no longer claim any
10   legitimate confusion with respect to the United States' intentions with the writ. The court grants
11   the United States' garnishment request in all other respects, as outlined below.

12   <u>Case No. 2:15-mc-99-JAM-KJN:  Raymond James Financial Services, Inc.</u>

13   The acknowledgement of service and answer of garnishee executed by Raymond James
14   Financial Services, Inc. on September 4, 2015, indicates that it has one brokerage account
15   (account no. xxxx6573), described as the Hoda Samuel SEP IRA, in which defendant maintains
16   an interest (with a value of $64,903.87). (99 ECF No. 8.) Other than the global objections
17   discussed above, neither defendant nor defendant's spouse filed specific objections or claims of
18   exemption with respect to this account.

19   The United States requests liquidation and final garnishment of the account. The United
20   States submitted account documentation demonstrating that defendant, who is over 60 years old,
21   is eligible to withdraw a lump sum from the IRA at any time and without penalty after attaining
22   age 59½. (99 ECF Nos. 9, 9-1, 10-3.) As such, liquidation and final garnishment of the IRA is
23   appropriate, and the court so orders. See <u>United States v. Novak</u>, 476 F.3d 1041, 1043 (9th Cir.
24   2007) ("[W]e conclude that criminal restitution orders can be enforced by garnishing retirement
25   funds, but with the funds only payable when the defendant has a current, unilateral right to
26   receive payments under the terms of the retirement plan.").

27   ////
28   ////

CONCLUSION

Accordingly, for the reasons discussed above, IT IS HEREBY ORDERED that:

1. Defendant's requests for the appointment of counsel are denied.

2. Tri Counties Bank, as garnishee, is directed to liquidate and pay to the Clerk of Court,[5] within 21 days of the filing of this order, the contents of the following accounts: (a) account number xxxxx2463 and (b) account number xxxxx6521. The garnishment on all remaining accounts at Tri Counties Bank referenced in the garnishee's answer shall be continued, pending further order of the court.

3. Tri Counties Bank shall permit the United States, upon reasonable notice, to inspect, photograph, and inventory the contents of safety deposit box number 5200063 in the presence of a Tri Counties Bank official; as well as to inspect and copy all records in Tri Counties Bank's possession, custody, or control associated with the creation, maintenance, and access to that safety deposit box.

4. Within 45 days of this order, the United States shall file supplemental briefing in Case No. 2:15-mc-16-JAM-KJN that outlines: (a) whether the United States wishes to proceed with garnishment of the corporate accounts at Tri Counties Bank; (b) whether the United States wishes to proceed with garnishment of the safety deposit box at Tri Counties Bank; and (c) points and authorities in support of the requested relief.

5. CalPERS, as garnishee, shall pay to the Clerk of Court 25% of defendant's monthly disability retirement benefits, referenced in the garnishee's answer, until the amount sought by the writ is paid in full. Additionally, CalPERS shall pay to the Clerk of Court, within 21 days of the filing of this order, 25% of the monthly disability retirement benefits that should have been withheld pursuant to the writ from August 1, 2015, through the date of this order.

---

[5] Whenever this order directs payment by any garnishee to the Clerk of Court, the payment shall be made to the "Clerk of the Court" at the Office of the Clerk, United States District Court, Eastern District of California, 501 I Street, Suite 4-200, Sacramento, California 95814. The docket number (Case No. 2:10-CR-223-JAM) shall be stated on the payment instrument, and if a garnishee desires a payment receipt, the garnishee shall include a self-addressed, stamped envelope with the payment.

11

6. Raymond James Financial Services, Inc., as garnishee, is directed to liquidate and pay to the Clerk of Court, within 21 days of the filing of this order, the contents of account no. xxxx6573, which is described in the garnishee's answer as the Hoda Samuel SEP IRA.

7. The Clerk of Court shall administratively close Case Nos. 2:15-mc-17-JAM-KJN and 2:15-mc-99-JAM-KJN, the court having resolved all pending matters in those cases. However, Case No. 2:15-mc-16-JAM-KJN shall remain open for further proceedings with respect to the Tri Counties Bank corporate accounts and safety deposit box.

IT IS SO ORDERED.

Dated: February 17, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE